# IN THE OREGON TAX COURT

MULTNOMAH COUNTY TAX COLLECTOR
on behalf of all Taxing Districts
in Multnomah County, Oregon

*v.*

BERLAND,
dba Professional Dental-Medical Leasing

(TC 2408)

Paul G. Mackey, Assistant County Counsel, Multnomah County, represented plaintiff.

Walter A. Barnes, Barnes, Berentson & Sweeney, Milwaukie, represented defendant.

Decision for defendant rendered December 2, 1986.

**CARL N. BYERS, Judge.**

Plaintiff seeks to hold defendant personally liable for

"damages" in the amount of unpaid property taxes assessed against certain personal property. The case is before the court on plaintiff's motion for summary judgment which defendant opposes. The basic facts are not in dispute. Both parties have filed memorandums in support of their positions.

The taxes in question were assessed against restaurant equipment owned by Millak Investments, Inc., dba Fast Eddie's, in which equipment defendant had a security interest. Sometime on or after March 14, 1985, Fast Eddie's closed and the equipment was moved to another location. Suit was filed in circuit court by First Harrison Company to enjoin Millak Investments, Inc., from further moving or disposing of the equipment.[1] Subsequently, a written "escrow agreement" was entered into between First Harrison Company, Millak Investments, Inc., defendant and a Bill Bushman who appears to be a restaurant equipment dealer. The agreement provided for the equipment to be sold by Bushman and the proceeds, after payment of Bushman's commission, to be paid to the attorneys for First Harrison Company and Millak Investments, Inc. The agreement acknowledged that defendant was entitled to be paid a specified amount and that in the discretion of the parties' attorneys acting as trustees, "the money owing to Berland can be disbursed directly to him without being deposited in the joint trust account." Since the property was at that time subject to jurisdiction of the circuit court, the parties to the lawsuit agreed to a stipulated order which was entered July 18, 1985, indicating that the equipment "may be liquidated pursuant to the Escrow Agreement." The court was to continue to have "authority over the proceeds remaining after paying the commission to the salesperson and the amount owing to Professional Dental-Medical Leasing." Pursuant to the agreement and the court order, the property was sold. It appears that defendant received all the net proceeds from the sale but they were inadequate to satisfy the debt owing to defendant.

Property taxes on the equipment in the amount of $2,841.87, owing for years 1984 and 1985, had not been paid.

---

[1] It is not clear from the documents submitted in the court's file but it appears that Millak Investments, Inc., became indebted to First Harrison Company for other property which First Harrison leased to Millak Investments, Inc.

No one gave plaintiff notice of the sale of the property. ORS 311.656(1) provides:

> "No security interest in, or other lien upon, taxable personal property shall be foreclosed by the sale of the property unless the secured party, an agent or the attorney for the secured party, at least five days before the date of the sale, has mailed or delivered to the tax collector of the county in which the sale is to be held, a copy of the notice of the foreclosure sale. The notice shall be mailed to the tax collector, return receipt requested, and shall contain a list of the personal property to be sold, together with the name and address of the owners of the property. Failure to mail or deliver the notice shall not invalidate the sale, but the tax collector shall have recourse against the secured party on behalf of the taxing units for any damages sustained on account of failure to mail or deliver the notice."

Plaintiff's complaint alleges that the property is no longer available to plaintiff to recover the delinquent taxes; that defendant failed to notify plaintiff of the sale and therefore seeks judgment against defendant in the amount of the taxes, plus costs.

Defendant responds that the sale which took place was not a "foreclosure" sale and therefore defendant was not obligated to give plaintiff the statutory notice. In support of his position, defendant cites ORS 79.5010(5).[2] Defendant also points to ORS 88.010, which specifies that a lien on personal property "shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit." Relying on these statutes, defendant argues that a foreclosure sale requires the secured party to reduce its claim to judgment, execution to issue, and a judicial sale to take place.

Plaintiff argues to the contrary, citing the language in ORS 88.010 which indicates that judicial sale is not the

---

[2] "(5) When a secured party has reduced the claim of the secured party to judgment the lien of any levy which may be made upon the collateral of the secured party by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral. A judicial sale, pursuant to such execution, is a foreclosure of the security interest by judicial procedure within the meaning of this section, and the secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of ORS 79.1010 to 79.5070."

exclusive remedy available to a secured party. Plaintiff also cites ORS 79.5070(2) as authority for its position.

■ In the absence of a statutory definition of what constitutes a "foreclosure by sale" it is helpful to consider the problem in context. Personal property taxes may be assessed against the owner or the person in possession. ORS 308.105. Personal property taxes are a personal liability of the owner. ORS 311.455. Delinquent personal property taxes are to be collected by seizure and sale of the personal property assessed or the taxable personal property of the person assessed. ORS 311.640.

■ In context, then, it appears that what ORS 311.656(1) is intended to accomplish is to add a secured party as one who can be held personally responsible for unpaid personal property taxes. Like the owner, a secured party has the power to transfer ownership of the property. However, the liability of the secured party attaches only if the secured party's lien or security interest is "foreclosed by the sale of the property" without notice. Inasmuch as security interests in personal property may be foreclosed in a number of different ways, it does not appear that the language in ORS 311.656 implies a judicial foreclosure. The word "foreclosure" alone does not mean only a judicial foreclosure but generally connotes the process by which a security interest is turned into money. Oregon's Uniform Commercial Code expressly recognizes the right of a secured party to foreclose by taking possession and selling the property in a commercially reasonable manner. ORS 79.5040. Such a sale has the consequences of a foreclosure.

"When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of ORS 79.5010 to 79.5070 or of any judicial proceedings:

"(a)   In the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if the purchaser does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

"(b)   In any other case, if the purchaser acts in good faith." (ORS 79.5040(4).)

If the language in ORS 311.656(1) were to be interpreted as only applying to judicial foreclosures, secured parties would have a broad escape hatch. The general language of the statute and the apparent intent of the legislature is to the contrary.

■         Even though the term "foreclosed by sale of property" includes private foreclosure sales as well as judicial foreclosures, there is still the question of whether it applies to what occurred in this case. Phrased differently, was defendant's interest in the property "foreclosed by sale" of the property? Defendant's affidavit asserts that he never had possession of the property, never sold the property and was not involved in the sale. He was not a party to the lawsuit enjoining the owner from the sale of the property. Defendant's affidavit also asserts that all sales and arrangements for the sale were made by the debtors and that defendant did not even know where the property was. From the documents submitted, it appears that First Harrison Company and Millak Investments, Inc., had worked out the arrangement to dispose of the property and use the proceeds to settle the account between them. However, because defendant had a prior security interest, it was necessary for those parties to involve defendant. Consequently, defendant's role was to agree that when the property was sold, certain of the net sale proceeds were to go to defendant to satisfy his security interest. Defendant did not control the sales nor the proceeds themselves.

In light of the undisputed relationships and arrangements between the parties, the court concludes that defendant's secured interest was not "foreclosed by sale of property." Although defendant's secured interest in the property was terminated by virtue of the sale, it was not a foreclosure sale. Rather, it was a sale made by the owner of the property with an agreement by the owner to pay the secured party from the sale proceeds. Such is not a "foreclosure" within the meaning of the statute.

An order will be entered denying plaintiff's motion for summary judgment and dismissing plaintiff's complaint, with prejudice. Costs to neither party.